200618098
(kmb)

COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO

06CVE07   9066

Washington Mutual Bank fka
Washington Mutual Bank, FA
c/o Washington Mutual Bank
7800 North 113th Street
Mail Stop MWIB201
Milwaukee, WI 53224

Case No.

G. Reece

**COMPLAINT IN FORECLOSURE**
[With Notice Under the Fair
Debt Collection Practices Act]

Plaintiff
vs.

Permanent Parcel No. 010-048025-00

Jack K. Beatley
70 West Northwood Avenue
#1E
Columbus, OH 43201

64 W. Northwood Avenue, LLC
c/o Washington Holding Company,
Statutory Agent
1635 W. First Avenue
Columbus, OH 43212

John Doe, name unknown, occupant
64 West Northwood Avenue
Columbus, OH 43201

Don Breckenridge
2650 Columbus Street
Grove City, OH 43123

2006 JUL 14 PM 3:49
CLERK OF COURTS
FILED COMMON PLEAS COURT FRANKLIN CO. OHIO

Defendants.

### NOTICE

The Summons attached to this Complaint advises you of certain of your rights under state law for responding to this Complaint. Among these rights is your right to serve your Answer upon Lerner, Sampson & Rothfuss within twenty-eight (28)

«Barcode»
«BarcodeLabel»

days. If your name appears in numbered paragraph 1 below, you have additional rights under federal law to request certain information from Lerner, Sampson & Rothfuss within thirty (30) days. These time periods run at the same time and start on the day after you receive this Complaint.

The federal Fair Debt Collection Practices Act requires that Lerner, Sampson & Rothfuss provide you with the following information. The amount of the debt, as of July 4, 2006, is $137,567.39. This amount is made up of your principal balance, interest, late charges, and amounts expended by the creditor, such as for taxes and insurance. Because many of these items vary from day to day, the amount due on the day you pay will be greater. Hence, if you pay the amount shown above, an adjustment will be necessary after we receive your check.

The creditor to whom the debt is owed is the plaintiff listed above. Unless, within thirty (30) days of your receipt of this Notice, you notify Lerner, Sampson & Rothfuss that you dispute the validity of this debt or any portion of it, Lerner, Sampson & Rothfuss will assume the debt is valid. Lerner, Sampson & Rothfuss is a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose.

If you notify Lerner, Sampson & Rothfuss in writing within thirty (30) days of the receipt of this Notice that the debt or

any portion thereof is disputed, Lerner, Sampson & Rothfuss will obtain a verification of the debt and will mail a copy of that verification to you. If the creditor named as plaintiff above is not the original creditor, and if you make written request to Lerner, Sampson & Rothfuss within thirty (30) days from the receipt of this notice, Lerner, Sampson & Rothfuss will provide you with the name and address of the original creditor.

## COMPLAINT

### COUNT ONE

1. Plaintiff is the holder and owner of a note, a copy of which is attached hereto as Exhibit 'A'. By reason of default under the terms of the note and the mortgage securing same, plaintiff has declared the debt evidenced by said note due, and there is due thereon from the defendant, Jack K. Beatley, $131,951.48, together with interest at the rate of 7% per year from February 20, 2006, plus court costs, advances, and other charges, as allowed by law.

### COUNT TWO

2. Plaintiff incorporates the allegations of Count One and further states that it is the holder of a mortgage, a copy of which is attached hereto as Exhibit 'B'. The mortgage was given to secure payment of the above-described note, and said mortgage constitutes a valid first lien upon the real estate described therein.

3. The mortgage was filed for record on April 25, 1990, in Volume 15090, Page E17, of the county recorder's records; it was subsequently assigned to the plaintiff herein. The conditions of defeasance contained therein have been broken, and plaintiff is entitled to have said mortgage foreclosed.

4. Plaintiff says that the defendant, John Doe, name unknown, occupant, may claim an interest in the subject property as the current occupant. Plaintiff states that it cannot currently discover the real name of said defendant.

5. Plaintiff says that the defendant, Don Breckenridge, may claim an interest in the above described property by virtue of a judgment lien against Jack K. Beatley, filed for record on 07/13/01, as Judgment No. 01JG-07-005014, and an Execution, against Jack K. Beatley, filed for record on 07/13/01, as Execution No. 01EX 07 678, of said County Clerk's Records.

6. Plaintiff says that the defendant, 64 W. Northwood Avenue, LLC, may claim an interest in the subject property by virtue of being a current titleholder thereof.

WHEREFORE, plaintiff prays for judgment against defendant, Jack K. Beatley, in the amount of $131,951.48, together with interest at the rate of 7% per year from February 20, 2006, plus court costs, advances, and other charges, as allowed by law; that plaintiff's mortgage be adjudged a valid first lien upon the real estate described herein, and that said mortgage be foreclosed;

that said real property be ordered sold, and that plaintiff be paid out of the proceeds of such sale; for such other relief, legal and equitable, as may be proper and necessary; and that all the other defendants herein be required to set up their liens or interests in said real estate or be forever barred from asserting same.

                                      Robyn M. Regan, Trial Counsel
                                      Ohio Supreme Court Reg. #0075533
                                      LERNER, SAMPSON & ROTHFUSS
                                      Attorneys for Washington Mutual Bank fka
                                      Washington Mutual Bank, FA
                                      P.O. Box 5480
                                      Cincinnati, OH 45201-5480
                                      (513) 241-3100
                                      (513) 241-4094(Fax)
                                      attyemail@lsrlaw.com

# PROMISSORY NOTE - ADJUSTABLE INTEREST RATE

**THIS NOTE CONSISTS OF TWO PAGES. REVIEW ALL PROVISIONS OF THIS NOTE BEFORE SIGNING**

EXHIBIT A

$ 187,000.00         DUBLIN            JACK K. BEAILEY    LOAN NO 1152131-3
                                       , Ohio,    DATE APRIL 20, 1990

1. **BORROWER'S PROMISE TO PAY PRINCIPAL AND INTEREST.** For value received I promise to pay to HOME SAVINGS of AMERICA, F.A., a corporation, or order, at its offices in the City of Pasadena, State of California, or at such other place as the holder of this Note may from time to time designate the principal sum of

ONE HUNDRED EIGHTY-SEVEN THOUSAND AND NO/100

DOLLARS ($ 187,000.00          ), with interest from the date hereof on the unpaid principal balance at the initial interest rate of NINE AND 10/100          percent ( 9.100       %) per annum, principal and interest payable in monthly installments of  ONE THOUSAND FIVE HUNDRED EIGHTEEN AND 12/100
Dollars ($ 1,518.12      ) each, beginning on the 20th       day of  May, 1990,
and continuing on the 20th       day of each and every month thereafter until APRIL 20, 2020
(the "Due Date"), on which date any unpaid interest and all other sums due under this Note shall be paid in full.

2. **ADJUSTABLE INTEREST RATE PROVISIONS.** I agree that the interest rate on this Note will be adjusted on each Interest Rate Adjustment Date as defined below, to be equal, following such date until the next Interest Rate Adjustment Date, to the sum of (i) the most recently available monthly weighted average cost of funds of members of the Federal Home Loan Bank of San Francisco, as computed from statistics tabulated and published by the Federal Home Loan Bank of San Francisco (such monthly weighted average cost of funds being hereafter referred to as the "Index"); plus (ii) 2.40       percentage points.

(a) **Interest Rate Adjustments.** Changes in the interest rate on this Note will become effective commencing on OCTOBER 20, 1990          , and on the same date each month thereafter, each of which dates is called an "Interest Rate Adjustment Date." No adjustment to the interest rate on any Interest Rate Adjustment Date shall result in an interest rate that is greater than 14.750      % per annum (the "Original Maximum Interest Rate") or less than 7.000     % per annum, provided, that following the sale or transfer of the real property described in the Mortgage identified below that occurs subsequent to  OCTOBER 20, 1990          , adjustments to the interest rate on any subsequent Interest Rate Adjustment Date shall not result in an interest rate that is higher than the greater of either (i) the Original Maximum Interest Rate, or (ii) 5 percentage points more than the interest rate in effect at the time of the sale or transfer, and shall not result in an interest rate that is lower than 5 percentage points less than the interest rate in effect at the time of the sale or transfer, provided, however, that no adjustment to the interest rate will result in an interest rate that is below 7.00% per annum.

(b) **Payment Adjustments.** The monthly payment amount shall be adjusted on  MAY 20, 1991,
and on the same date each    12th     month thereafter, each of which dates is called a "Payment Adjustment Date." If an interest rate change has been made on an Interest Rate Adjustment Date, the amount of the regular monthly principal and interest payments will be adjusted on the next Payment Adjustment Date so as to be sufficient to amortize the remaining principal balance as of the Due Date. Except as provided below, during the 12-month period following the date of this first monthly payment and during each 12-month period thereafter (each of which 12-month periods is called a "Loan Year") no increase or decrease in a monthly payment will be greater than 7½% of (i) the amount of the first regular monthly payment in the case of the first Loan Year, or (ii) the amount of the last regularly scheduled payment of the immediately preceding Loan Year in the case of each Loan Year after the first Loan Year.

(c) **Principal Balance Adjustments.** If any adjustment to the interest rate results in a monthly payment being less than the amount of interest accrued for a month either because of an interest rate adjustment or because of the 7½% limitation on increases or decreases in the monthly payment amount, such accrued but unpaid interest will be added monthly to the unpaid principal balance and will thereafter bear interest at the interest rate that is from time to time payable on this Note. Notwithstanding any other provisions of this Note, including the 7½% limitation contained in the preceding subparagraph (b), commencing on   MAY 20, 1995            and on the same date every five years thereafter the amount of the regular monthly principal and interest payments on this Note will be adjusted to be sufficient so as to amortize the remaining principal balance as of the Due Date at the then current rate of interest if such interest were to continue in effect until the Due Date.

(d) **Waiver of Increases.** Interest rate increases on each Interest Rate Adjustment Date are at the holder's option, but if the holder does not invoke a permissible interest rate increase in whole or in part, this will not constitute a waiver of the holder's right later to invoke such an increase, subject to the other provisions of this Note.

(e) **Alternative Index.** If, at any time during the term of this Note, the Index is no longer available or is otherwise unpublished, the holder may select an alternative published index over which the holder has no control, in which case such alternative index will become the Index provided in paragraph 2 of this Note. Holder shall next determine the adjustment to the loan factor provided in paragraph 2 of this Note based upon the value of the substituted index as of the last preceding Interest Rate Adjustment Date on which the prior Index was available or the date of this Note, whichever occurs later, such that the sum of the substituted Index and the adjusted loan factor equal the sum of the prior Index and the loan factor set forth in paragraph 2 of this Note as of such date. The most recent value of the substituted Index, as announced from time to time, and such adjusted loan factor shall become the Index and the loan factor for purposes of paragraph 2 of this Note.

(f) **Notices.** Notices of any change in the interest rate or amount of the regular monthly installment shall be deemed given by the holder when deposited in the United States mail, postage prepaid, addressed to the maker, or, to the persons shown on the holder's records as transferee at the time of giving notice at the address shown on the holder's record as the address for such maker or transferee.

3. **CREDITING OF PAYMENTS** Each installment payment received by the holder shall be credited as of its date without regard to its date of receipt by the holder, first to interest then due and the remainder to principal, and interest shall cease upon the principal so credited as of the date that such credit is made. For the purposes of allocation of any monthly installment payment as between principal and interest, interest shall consist of the product of the outstanding principal balance on this loan immediately prior to allocation of the monthly installment payment times the then applicable interest rate of this Note divided by twelve. All other interest calculations on this Note shall be made on a daily basis. Daily interest shall consist of the product of the outstanding principal balance on this Note times the annual interest rate divided by the number of calendar days in the year for which the daily interest calculation is made.

4. **DEFAULT BY BORROWER.** Should default be made in the payment of any installment when due, or in the performance of any provision or condition contained in the Mortgage securing this Note, the whole sum of principal and interest shall become immediately due at the option of the holder and regardless of any prior forebearance. Interest shall accrue following any default hereunder at the rate set forth in this Note, as adjusted from time to time.

5. **LATE CHARGE.** I agree (a) to pay immediately, without demand, to the holder, in the event any installment is not received by the holder within fifteen (15) days after its due date, and without regard to the date as of which such payment is credited, an amount equal to the equivalent of 6% of the installment due that is applicable to the payment of principal and interest, (b) that it would be impractical or extremely difficult to fix the holder's actual damages in the event that any installment shall not be paid when due, and (c) that such amount shall be presumed to be the amount of damages for such late payment. This paragraph and the amount which it provides shall not limit the holder's right, under this Note, the Mortgage securing it, or otherwise to compel prompt performance thereunder. I also agree to pay all costs or fees of collection incurred by the holder, including attorneys' fees for consultation, preparing demand letters or bringing any action for collection.

6. **PREPAYMENT PRIVILEGE.** The principal amount due on this Note may be prepaid in whole or in part, at any time.

7. **NOTE PAYABLE IN U.S. DOLLARS** Principal, interest, and charges are payable in lawful money of the United States.

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE** In this Note, the singular shall include the plural and this Note shall be the joint and several obligation of each maker.

9. **ACCELERATION CLAUSE** This Note is secured by a Mortgage of even date in favor of Home Savings of America, F.A., and said Mortgage contains the following clause, which is incorporated herein. "Transfer of the Property Acceleration Clause Right of Lender to Declare All Sums Due on any Transfer, Etc. Lender shall have the right, at its option, to declare any indebtedness and obligations secured hereby, irrespective of the maturity date specified in any note or agreement evidencing the same, due and payable within 30 days after such declaration if (a) Borrower or any successor in interest to Borrower of such property sells, enters into a contract of sale, conveys or alienates such property or any part thereof, or suffers his title or any interest therein to be divested, whether voluntarily or involuntarily or leases such property, or any part thereof for a term of more than 3 years, or changes or permits to be changed the character or use of such property, or drills or extracts or enters into a lease for the drilling for or extracting of oil, gas or other hydrocarbon substance or any mineral of any kind or character on such property, or (b) Borrower is a partnership and the interest of a general partner is assigned or transferred, or (c) Borrower is a corporation and more than 25% of the corporation stock thereof is sold, transferred or assigned during a 12-month period, or (d) Borrower is a trust and there is a change of beneficial interest with respect to more than 25% of such property, or (e) Borrower has made any material misrepresentation or failed to disclose any material fact in those certain financial and other written representations and disclosures made by Borrower in order to induce Lender to enter into the transaction evidenced by the Promissory Note or notes or agreements which this Mortgage secures."

10. **ASSUMABILITY OF THIS NOTE.** The holder shall not exercise its rights to declare all sums due, pursuant to paragraph 9 above, in the event of a sale or transfer of the property, provided that, (a) the buyer submits a credit application which is approved by the holder, (b) the buyer executes a written assumption agreement and other documents prepared by the holder, (c) the buyer pays the holder an assumption fee equal to one percent of the outstanding principal balance of the loan as of the date of the sale or transfer; and (d) no statute, rule, decision or otherwise, including usury limitations, restricts in any manner holder's right to make interest rate or payment adjustments in accordance with this Note.

11. **COST OF LITIGATION.** If suit is brought to collect this Note, to the extent not prohibited by law the Note holder shall be entitled to collect all reasonable costs and expenses of suit, including, but not limited to, reasonable attorney's fees.

REVIEW ALL PROVISIONS OF THIS NOTE BEFORE SIGNING. THIS NOTE CONSISTS OF TWO PAGES

*Judi K. Beatley*
A. K. BEATLEY

LOAN NO.   118335-3

Interest Endorsed as
Paid to 4-20-90
Home Savings of America, F.A.
By UT BAGHANS

SF 8962 T (R2) C  6/85 ADM R & IV  Part 2 (OH)    2 of 2

# OPEN END MORTGAGE

15090E17

PREPARED BY AND RETURN TO
V. LANGHANS
HOME SAVINGS OF AMERICA
P.O. BOX 7075
PASADENA, CALIFORNIA 91109-7075

LOAN NO. 1183139-3

043239

ADJUSTABLE RATE MORTGAGE LOAN

This Mortgage, made this 20th day of APRIL, 1990, between the Mortgagor,
JACK K. BEATLEY, AN UNMARRIED MAN

herein called Borrower whose address is    64 WEST NORTHWOOD AVENUE
                                           COLUMBUS OH. 43201

and the Mortgagee, HOME SAVINGS OF AMERICA F.A., a corporation herein called LENDER, whose address is P.O. Box 7075, Pasadena, California 91109-7075

WHEREAS, Borrower is indebted to Lender in the principal sum of

ONE HUNDRED EIGHTY-SEVEN THOUSAND AND NO/100                                              Dollars
which indebtedness is evidenced by Borrower's Note of even date herewith (herein "Note"), providing for payment of principal and interest.
NOW THEREFORE, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the
County of   FRANKLIN                        , in the State of Ohio.

SITUATED IN THE CITY OF COLUMBUS, FRANKLIN COUNTY, OHIO: BEING LOT 14 OF GEORGE
WILLIAMS JR'S. MT. AUBURN ADDITION, AS THE SAME IS NUMBERED AND DELINEATED UPON THE
RECORDED PLAT THEREOF, OF RECORD IN PLAT BOOK 3, PAGE 322, IN THE OFFICE OF THE
RECORDER OF FRANKLIN COUNTY, OHIO.

TIME  11:45A M

COMMONLY KNOWN AS 64 WEST NORTHWOOD AVENUE, COLUMBUS, OH. 43201    RECORDED FRANKLIN CO. OHIO

APR 25 1990

JOSEPH W. TESTA, RECORDER
RECORDER'S FEE $  14.00

Together with all interest which Borrower now has or may hereafter acquire in or to said property, and in and to: (a) all easements and rights of way appurtenant thereof; (b) all buildings, structures, improvements, fixtures and appurtenances now or hereafter placed thereon, including, but not limited to, all apparatus and equipment, whether or not physically affixed to the land or any building, used to provide or supply air-cooling, air-conditioning, heat, gas, water, light, power, refrigeration, ventilation, laundry, drying, dishwashing, garbage disposal or other services; and all waste vent systems, antennas, pool equipment, window coverings, drapes and drapery rods, carpeting and floor covering, awnings, ranges, ovens, water heaters and attached cabinets; it being intended and agreed that such items be conclusively deemed to be affixed to and to be part of the real property that is conveyed hereby; and (c) all water and water rights (whether or not appurtenant) and shares of stock pertaining to such water or water rights, ownership of which affects said property. Borrower agrees to execute and deliver, from time to time, such further instruments as may be requested by Lender to confirm the lien of this Mortgage on any such properties. The properties mortgaged, granted, and conveyed to Lender hereunder are hereinafter referred to as "such property".
The Borrower absolutely and irrevocably grants, transfers and assigns to Lender the rents, income, issues, and profits of all property covered by this Mortgage.
Borrower covenants that Borrower is lawfully seised of the estate herein conveyed and has the right to mortgage, grant and convey such property, that such property is unencumbered, and that Borrower will warrant and defend generally the title to such property against all claims and demands, subject to any declarations, easements or restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in such property.
FOR THE PURPOSE OF SECURING:
(1) Payment of the sum of $  187,000.00         with interest thereon, according to the terms of a promissory note of even date herewith and having a final maturity date of    APRIL 20, 2020       made by Borrower, payable to Lender or order, and all modifications, extensions or renewals thereof. (2) Payment of such additional sums with interest thereon: (a) as may be hereafter borrowed from Lender by the then record owner of such property and evidenced by a promissory note or notes reciting it or they are so secured and all modifications, extensions or renewals thereof; or (b) as may be incurred, paid out, or advanced by Lender, or may otherwise be due to Lender, under any provisions of this Mortgage and all modifications, extensions or renewals thereof. (3) Performance of each agreement of Borrower contained herein or incorporated herein by reference or contained in any papers executed by Borrower relating to the loan secured hereby. (4) Performance, if the loan secured hereby or any part thereof is for the purpose of constructing improvements on such property, of each provision or agreement of Borrower contained in any construction loan agreement or other agreement between Borrower and Lender relating to such property. (5) The performance and keeping by Borrower of each of the covenants and agreements required to be kept and performed by Borrower pursuant to the terms of any lease and any and all other instruments creating Borrower's interest in or defining Borrower's right in respect to such property. (6) Compliance by Borrower, with each and every monetary provision to be performed by Borrower under any declaration of covenants or conditions or restrictions pertaining to such property, and upon written request of Lender, the enforcement by Borrower of any covenant to pay maintenance or other charges, if the same have not been paid or valid legal steps taken to enforce such payment within ninety (90) days after such written request is made. (7) At Lender's option, payment, with interest thereon, of any other present or future indebtedness or obligation of Borrower (or of any successor in interest of Borrower to such property) due to Lender, whether created directly or acquired by absolute or contingent assignment, whether due or not, whether otherwise secured or not, or whether existing at the time of the execution of this Mortgage or arising thereafter, the exercise of such option to be evidenced by a notice in writing to Borrower or any successor in interest of Borrower. (8) Performance of all agreements of Borrower to pay fees and charges to the Lender whether or not herein set forth. (9) Payment of charges, as allowed by law when such charges are made, for any statement regarding the obligation secured hereby

1 of 4

TO PROTECT THE SECURITY OF THIS MORTGAGE, BORROWER AGREES:

(1) **Construction or Improvements.** To complete in good and workmanlike manner any building or improvement or repair relating thereto which may be begun on such property or contemplated by the loan secured hereby, to pay when due all costs and liabilities incurred therefor, and not to permit any mechanic's lien against such property, nor any stop notice against any loan proceeds. Borrower also agrees, anything in this Mortgage to the contrary notwithstanding: (a) to promptly commence work and to complete the proposed improvements promptly; (b) to complete same in accordance with plans and specifications as approved by Lender; (c) to allow Lender to inspect such property at all times during construction; (d) to replace any work or materials unsatisfactory to Lender, within fifteen (15) days after written notice from Lender of such fact, which notice may be given to Borrower by certified or registered mail, sent to his last known address, or by personal delivery of the same; and (3) to perform all other obligations of Borrower under any building loan agreement relating to such property. Lender is authorized to do all things provided to be done by a mortgagee under Section 1311.14, Ohio Revised Code.

(2) **Repair and Maintenance of Property.** To keep such property in good condition and repair, not to substantially alter, remove or demolish any buildings thereon, to restore promptly and in good workmanlike manner any buildings which may be damaged or destroyed including, damage from termites and earth movement, to pay when due all claims for labor performed and materials furnished in connection with such property and not to permit any mechanic's lien against such property, to comply with all law affecting such property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereon, not to commit, suffer or permit any act upon such property in violation of law; to cultivate, irrigate, fertilize, fumigate and prune, and to do all other acts that from the character or use of such property may be reasonably necessary to keep such property in the same condition (reasonable wear and tear excepted) as at the date of this Mortgage.

(3) **Fire and Casualty Insurance.** To provide and maintain in force at all times fire and other types of insurance with respect to such property as may be required by Lender. Each policy of such insurance shall be in amount, for a term and in form and content and by such companies, as may be satisfactory to Lender, with loss payable to Lender, and shall be delivered to, and remain in possession of, Lender as further security for the faithful performance of this Mortgage. Borrower shall also furnish Lender with written evidence showing payment of all premiums therefor. At least thirty (30) days prior to the expiration of any insurance policy, a policy renewing or extending such expiring insurance shall be delivered to Lender with written evidence showing payment of the premium therefor, and, in the event any such insurance policy and evidence of payment of the premium are not so delivered to Lender, Borrower by executing this Mortgage specifically requests Lender to obtain such insurance. Lender, but without obligation so to do, without notice to or demand upon Borrower and without releasing Borrower from any obligation hereof, may obtain such insurance through or from any insurance agency or company acceptable to it, and pay the premium therefor. Lender shall not be chargeable with obtaining or maintaining such insurance or for the collection of any insurance monies or for any insolvency of any insurer or insurance underwriter. Lender, from time to time, may furnish to any insurance agency or company, or any other person, any information contained in or extracted from any insurance policy theretofore delivered to Lender pursuant hereto, and any information concerning the loan secured hereby. Borrower hereby assigns to Lender all unearned premiums on any such policy, and agrees that any and all unexpired insurance shall inure to the benefit of and pass to, the purchaser of the property conveyed at any judicial sale held hereunder.

(4) **Life, Health or Accident Insurance.** If Borrower shall maintain life, accident or health insurance and Lender shall be the owner or holder of any policy of such insurance as further security hereunder, Lender may elect to pay any premiums thereon as to which Borrower shall be in default, and any amount so paid may be secured hereby.

(5) **Taxes and Other Sums Due.** To pay, satisfy and discharge (a) at least ten (10) days before delinquency, all general and special city and county taxes, and all assessments on water stock affecting such property, (b) when due, all special assessments for public improvements, and (c) on demand of Lender but in no event later than the date such amounts become due, (1) all encumbrances, charges and liens, with interest, on such property, or any part thereof, which are, or appear to Lender to be prior to, or superior hereto, (2) all costs, fees and expenses of this Mortgage whether or not described herein, (3) fees or charges for any statement regarding the obligation secured hereby in any amount demanded by Lender not to exceed the maximum amount allowed by law therefor at the time when such request is made; (4) such other charges as the Lender may deem reasonable for services rendered by Lender and furnished at the request of Borrower or any successor in interest to Borrower; (5) if such property includes a leasehold estate, all payments and obligations required of the Borrower or his successor in interest under the terms of the instrument or instruments creating such leasehold; and (6) all payments and monetary obligations required of the owner of such property under any declaration of covenants or conditions or restrictions pertaining to such property or any modification thereof. Should Borrower fail to make any such payment, Lender, without contesting the validity or amount, may elect to make or advance such payment, together with any costs, expenses, fees or charges relating thereto. Borrower agrees to notify Lender immediately upon receipt by Borrower of notice of any increase in the assessed value of such property and agrees that Lender, in the name of Borrower, may contest by appropriate proceedings such increase in assessment. Borrower agrees to notify Lender and appropriate taxing authorities immediately upon the happening of any event which does or may affect the value of such property, the amount or basis of assessment of such property, or the availability of any exemption to which Borrower is or may be entitled.

(6) **Impounds.** To pay to Lender, if Lender shall so request, unless waived in writing by Lender, in addition to any other payments required hereunder, monthly advance installments, as estimated by Lender, for taxes, assessments, insurance premiums, ground rents or other obligations secured by this Mortgage (hereinafter in this paragraph referred to as "such obligations") for the purpose of establishing a fund to insure payment when due, or before delinquency, of any or all of such obligations required to be paid as to such property. If the amounts paid to Lender under the provisions of this paragraph are insufficient to discharge the obligations of Borrower to pay such obligations as the same become due or delinquent. Borrower shall pay to Lender upon its demand, such additional sums necessary to discharge Borrower's obligation to pay such obligations. All monies paid to Lender under this paragraph may be intermingled with other monies of Lender and shall not bear interest, except as required by law. Lender may pay such obligations whether before or after they become due and payable. In the event of a default in the payment of any monies due on the indebtedness secured hereby, default of any obligation secured hereby, or default in the performance of any of the covenants and obligations of this Mortgage, then any balance remaining from monies paid Lender under the provisions of this paragraph may, at the option of Lender, be applied to the payment of principal, interest or other obligations secured hereby in lieu of being applied to any of the purposes for which the impound account is established. Lender will make such reports of impounds as are required by law.

(7) **Condemnation and Injury to Property.** All sums due, paid or payable to Borrower or any successor in interest to Borrower of such property, whether by way of judgment, settlement or otherwise: (a) for injury or damage to such property, or (b) in connection with any condemnation for public use of or injury to such property or any part thereof, are hereby assigned and shall be paid to Lender. All causes of action of or belonging to Borrower, whether accrued before or after the date of this Mortgage, for damage or injury to such property, or any part thereof, or in connection with the transaction financed in whole or in part by the funds loaned to Borrower by Lender, or in connection with or affecting said property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of material fact, are hereby assigned to Lender, and the proceeds thereof shall be paid to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Mortgage or to any deficiency under this Mortgage or may release any monies so received by it or any part thereof, as Lender may elect. Lender may at its option appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute any further assignments and other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

(8) **Disposition of the Proceeds of any Insurance Policy, Condemnation or other Recovery.** The amount received by Lender pursuant to this Mortgage under any fire or other insurance policy, in connection with any condemnation for public use of or injury to such property, for injury or damage to such property or in connection with the transaction financed by the loan secured hereby, at the option of Lender may be applied by Lender to any indebtedness secured hereby and in such order as Lender may determine or, without reducing the indebtedness secured hereby, may be used to replace, restore, or reconstruct such property to a condition satisfactory to Lender or may be released to Borrower, or any such amount may be apportioned and allocated in any manner to any one or more of such uses. No such application, use or release shall cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(9) **Litigation.** Borrower shall defend this Mortgage in any action or proceeding purporting to affect such property whether or not it affects the lien hereof, or purporting to affect the lien hereof or purporting to affect the rights or powers of Lender, and shall file and prosecute all necessary claims and actions to prevent or recover for any damage to or destruction of such property; and Lender is hereby authorized, without obligation so to do, to prosecute or defend any such action, whether brought by or against Borrower or Lender, or with or without suit, to exercise or enforce any other right, remedy, or power available or conferred hereunder, whether or not judgment be entered in any action or proceeding, and Lender may appear or intervene in any action or proceeding and retain counsel therein, and take such action therein, as either may be deemed necessary or advisable, and may settle, compromise or pay the same or any other claims and in so doing, may expend and advance such sums of money as either may deem necessary. Whether or not Borrower so appears or defends, Borrower on demand shall pay to the extent not prohibited by law, all costs and expenses including but not limited to reasonable attorney's fees of Lender including costs of evidence of title, in any such action or proceeding in which Lender may appear by virtue of being made a party defendant or otherwise, and irrespective of whether the interest of Lender in such property or their respective rights or powers hereunder may be affected by such action, including, but not limited to any action for the condemnation or partition of such property and any suit brought by Lender to foreclose this Mortgage.

(10) **Loan on Leasehold Estate.** If such property includes a leasehold estate, Borrower agrees to comply with all of the terms, conditions and provisions of the instrument or instruments creating such leasehold. Borrower also agrees not to amend, change, or modify his leasehold interest, or the terms on which he has such leasehold interest, or to agree to do so, without the written consent of Lender being first obtained.

(11) **Prepayment Charge.** To pay any prepayment charge required under any note or obligation secured by this Mortgage. In the event that Borrower shall have defaulted in the performance of any obligation secured by this Mortgage and Lender, by reason thereof, shall have declared all sums secured by this Mortgage immediately due and payable.

(12) **Failure of Borrower to Comply with Mortgage.** Should Borrower fail to make any payment, or fail to do any act required by this Mortgage, or fail to perform any obligation secured by this Mortgage, or do any act Borrower agreed not to do, Borrower shall be in default under this Mortgage. Lender, but without obligation so to do and without notice to or demand upon Borrower and without releasing Borrower from any obligation hereof, and without contesting the validity or amount of the same, may (a) pay or do the same in such manner and to such extent as it may deem necessary to protect the security hereof, Lender being authorized to enter upon such property for such purposes, (b) pay, purchase, contest or compromise any encumbrance, charge or lien, which in its judgment is or appears to be prior or superior hereto, and (c) in exercising any such power, pay necessary expenses including but not limited to reasonable attorney's fees. Borrower agrees to repay any amount so expended on demand of Lender.

(13) **Sums Advanced to Bear Interest and To Be Added to Mortgage.** To pay immediately upon demand any sums advanced or paid by Lender under any clause or provision of this Mortgage. Any such sum, until so repaid, shall be secured hereby and bear interest from the date it was advanced or paid at the same interest rate, as may be adjusted from time to time, as such indebtedness, and such sum and interest thereon shall be secured by this Mortgage.

(14) **Application of Funds.** Lender shall have the right at its sole discretion to direct the manner in which payments or proceeds shall be applied upon or allocated among the various items constituting Borrower's indebtedness or obligations secured hereby.

(15) **Obligation of Borrower Joint and Several.** If more than one person is named as Borrower, each obligation of Borrower shall be the joint and several obligation of each such person.

(16) **No Waiver by Lender.** No waiver by Lender of any right under this Mortgage shall be effective unless in writing. Waiver by Lender of any right granted to Lender under this Mortgage or of any provision of this Mortgage as to any transaction or occurrence shall not be deemed a waiver as to any future transaction or occurrence. By accepting payment of any sum secured hereby after its due date, or by making any payment or performing any act on behalf of Borrower that Borrower was obligated hereunder, but failed, to make or perform, or by adding any payment so made by Lender to the indebtedness secured hereby, Lender does not waive its right to require prompt payment when due of all other sums so secured or to require prompt performance of all other acts required hereunder, or to declare a default for failure so to pay such other sums or to perform such other acts.

(17) **Transfer of the Property; Assumption. Acceleration Clause; Right of Lender to Declare All Sums Due on any Transfer, Etc.** Lender shall have the right, at its option, to declare any indebtedness and obligations secured hereby, irrespective of the maturity date specified in any note or agreement evidencing the same, due and payable within 30 days after such declaration if (a) Borrower or any successor in interest to Borrower of such property sells, enters into a contract of sale, conveys or alienates such property or any part thereof, or suffers his title or any interest therein to be divested, whether voluntarily or involuntarily, or leases such property, or any part thereof for a term of more than 3 years, or changes or permits to be changed the character or use of such property, or drills or extracts or enters into a lease for the drilling for or extracting of oil, gas or other hydrocarbon substance or any mineral of any kind or character on such property, or (b) Borrower is a partnership and the interest of a general partner is assigned or transferred; or (c) Borrower is a corporation and more than 25% of the corporation stock thereof is sold, transferred or assigned during a 12 month period, or (d) Borrower is a trust and there is a change of beneficial interest with respect to more than 25% of such property, or (e) Borrower has made any material misrepresentation or failed to disclose any material fact in those certain financial and other written representations and disclosures made by Borrower in order to induce Lender to enter into the transaction evidenced by the promissory note or notes or agreements which this Mortgage secures.

(18) **Acceleration; Remedies.** Except as provided in paragraph 17 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall mail notice to Borrower as provided in paragraph 29 hereof specifying (a) the breach, (b) the action required to cure such breach; (c) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured, and (d) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the property. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding to the extent not prohibited by law, all expenses of foreclosure, including, but not limited to, reasonable attorney's fees and costs of documentary evidence, abstracts and title reports.

(19) **Modification In Writing.** This Mortgage cannot be changed or modified except as otherwise provided in this Mortgage or by agreement in writing signed by Borrower, or any successor in interest to Borrower, and Lender.

(20) **Right to Collect and Receive Rents and Profits.** Upon any default by Borrower, in payment of any indebtedness secured hereby or in the performance of any agreement hereunder or upon abandonment of such property, Lender may at any time without notice, either in person, by agent, or by receiver to be appointed by the court and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of such property, or any part thereof; make, cancel, enforce or modify leases, obtain and eject tenants, set or modify rents, in its own name sue for or otherwise collect the rents, income, issues and profits thereof, including those past due and unpaid and apply the same to payment of costs and expenses of operation and collection including but not limited to receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to payment of any indebtedness secured hereby, and in such order as Lender may determine, and except for such application, Lender shall not be liable to any person for the collection or non-collection of any rents, income, issues and profits nor the failure to assert or enforce any of the foregoing rights. The entering upon and taking possession of such property, the collection of such rents, income, issues or profits, the doing of other acts herein authorized and the application thereof as aforesaid shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(21) **Remedies.** No remedy herein provided shall be exclusive of any other remedy herein or now or hereafter existing by law, but shall be cumulative. Every power or remedy hereby given to Lender or to which it may be otherwise entitled, may be exercised from time to time and as often as may be deemed expedient by it, and it may pursue inconsistent remedies. If Lender holds any additional security for any obligation secured hereby, it may enforce the sale thereof at its option, either before, contemporaneously with, or after any Lender's sale is made hereunder and on any default of Borrower, Lender may at its option, offset against any indebtedness owing by it to Borrower, the whole or any part of the indebtedness secured hereby, and the Lender is hereby authorized and empowered at its option, without any obligation so to do, and without affecting the obligations hereof, to apply toward the payment of any indebtedness secured hereby any and all sums of money, or credits of or belonging to Borrower and which the Lender may have in its possession or under its control including, among other things, any impounds held by Lender under paragraph (6) hereof.

In order to assure the definiteness and certainty of the rights and obligations herein provided, Borrower waives any and all rights of offset which Borrower now or hereafter may have against Lender, of claims and no offset made by Lender shall relieve Borrower from paying installments on the obligations secured hereby as they become due.

(22) **Power of Lender.** Without affecting the liability of any person, including Borrower, for the payment of any indebtedness secured hereby, or the lien of this mortgage upon any remainder of such property for the full amount of any indebtedness then or thereafter secured hereby, or the rights or powers of Lender with respect to the remainder of such property (other than any person or property specifically released by Lender), Lender from time to time without liability therefor, and without notice to Borrower, may do any one or more of the following (a) release any additional security for the indebtedness secured hereby, (b) extend the time or otherwise alter the terms of payment of such indebtedness, (c) accept additional security, (d) substitute or release any property securing such indebtedness; (e) consent to the making of any map or plat thereof; (f) join in granting any easement thereon, or (g) join in any extension agreement subordinating or otherwise affecting the lien or charge hereof.

(23) **Waiver of Statute of Limitations.** Time is of the essence as to all of Borrower's obligations hereunder, and to the extent permitted by law, Borrower waives all present or future statutes of limitation with respect to any debt, demand or obligation secured hereby in any action or proceeding for the purpose of enforcing this Mortgage or any rights or remedies hereunder.

(24) **Inspection and Business Records.** Lender at any time during the continuation of this Mortgage may enter and inspect such property at any reasonable time. Borrower agrees that in the event that such property is now or hereafter used for commercial or residential income purposes, that when requested by Lender, Borrower will promptly deliver to Lender such certified financial statements and profit and loss statements of such types and at such intervals as may be required by Lender which will be in form and content prepared according to the generally accepted accounting principles and practices, which statements shall cover the financial operations relating to such property, and Borrower further agrees, when requested by Lender, to promptly deliver, in writing, such further additional information as required by Lender relating to any such financial statements.

(25) **Governing Law: Severability.** The loan secured by this Mortgage is made pursuant to, and shall be construed and governed by, the laws of the United States and the rules and regulations promulgated thereunder, including the federal laws, rules and regulations for federal savings and loan associations. If any paragraph, clause or provision of this Mortgage or the note or any other notes or obligations secured by this Mortgage is determined by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those paragraphs, clauses or provisions so determined and shall not affect the remaining paragraphs, clauses and provisions of this Mortgage or the note or other notes secured by this Mortgage.

(26) **Offsets.** No indebtedness secured by this Mortgage shall be offset or compensated or shall be deemed to have been offset or compensated by all or part of any claim, cause of action, counterclaim or part of any claim, cause of action, counterclaim or crossclaim, whether liquidated or unliquidated, which Borrower now or hereafter may have or may claim to have against Lender, and, in respect to the indebtedness now or hereafter secured hereby, Borrower waives to the fullest extent permitted by law, any and all rights of offset which Borrower now or hereafter may have or claim to have in respect to all or part of the indebtedness secured hereby, and further waives the benefits of any applicable law, regulation or procedure which provides or substantially provides that, where the cross-demands for money have existed between persons at any point in time when neither demand was barred by the applicable statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in his answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting his claim would at the time of filing his answer be barred by the applicable statute of limitations.

(27) **Misrepresentation or Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the note or notes which this Mortgage secures, and in the event that Borrower has made any misrepresentation of a material fact or failed to disclose any material fact, Lender, at its option and without prior notice, shall have the right to declare the indebtedness secured by this Mortgage, irrespective of the maturity date specified in the note or notes, immediately due and payable.

(28) **Future Advances.** At any time prior to release of record of this Mortgage, Lender may, upon request, make future advances to Borrower or to Borrower's successor in title to the real property described in this Mortgage. Such future advances, with interest thereon, shall be secured by this Mortgage. The maximum amount of unpaid loan indebtedness, exclusive of interest thereon, which may be outstanding and secured by this Mortgage at any time is

FOUR HUNDRED THOUSAND AND NO/100 ................................................................. Dollars
($ 400,000.00 ). As used in this sentence, the term "loan indebtedness" does not include unpaid balances of advances made for the payment of taxes, assessments, insurance premiums, and costs incurred for the protection of the mortgaged property, but all such advances are also secured by this Mortgage. Such further or future advances shall be wholly optional with the Lender and the same shall bear interest at the same rate as specified in the note referred to herein, unless and until said interest rate shall be modified by subsequent agreement. Any such future or further advances which may be made by the Lender to and for the benefit of the Borrower, its heirs, personal representatives or assigns, in accordance with this paragraph shall be secured by this Mortgage to the same extent as if such future or further advances were made on the date of the execution hereof, irrespective of whether the note and Mortgage are in default or whether the note is past maturity and is due and payable in its entirety.

(29) **Notice to Borrower.** Any notice to the Borrower provided for in the note or this Mortgage shall be deemed given when it is deposited in the United States mail, postage prepaid, addressed to the Borrower at the address of the Borrower as it appears in Lender's records pertaining to the loan evidenced by the note at the time notice is given.

(30) **General Provisions.** (a) This Mortgage applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. (b) The term "Lender" shall mean the owner and holder (including a pledgee) of any note secured hereby, whether or not named as Lender herein. (c) Wherever the context so requires, the masculine gender includes the feminine and neuter, the singular number includes the plural, and vice versa. (d) Captions and paragraph headings used herein are for convenience only, are not a part of this agreement and shall not be used in construing it.

(31) **Adjustable Rate Mortgage Provisions.** The note which this Mortgage secures contains provisions which permit: (a) increases and decreases to the rate of interest provided in the note on a monthly basis; (b) increases and decreases to the monthly payment of principal interest on a yearly basis; (c) a limitation on increases and decreases to said monthly payment amount, and (d) increases in the outstanding principal amount due on the loan. Reference is made to said note for a complete description of the adjustable rate terms of the indebtedness secured by this Mortgage.

(32) **Attorney's Fees.** As used in this Mortgage and in the note "attorney's fees" shall include attorney's fees throughout all appeals.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

Signed, acknowledged and delivered in the presence of
(as to all signatures, if more than one):

_____, Witness     _____, Borrower
                                         JACK K. BEATLEY

_____, Witness     _____, Borrower

_____, Witness     _____, Borrower

_____, Witness     _____, Borrower


STATE OF OHIO          } SS
COUNTY OF   FRANKLIN   }

The foregoing instrument was acknowledged before me this 20th day of APRIL, 19___
by JACK K. BEATLEY, AN UNMARRIED MAN

[Seal]

My Commission expires:

_____
Notary Public
State of Ohio

LOAN NO. 1183139-3

---------- (Space Below This Line Reserved For Lender and Recorder) ----------

4 of 4

200618098

COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO

## INSTRUCTIONS FOR SERVICE

Washington Mutual Bank fka
Washington Mutual Bank, FA

Case No. **06CVE07 9066**

                Plaintiff,

-vs-

Jack K. Beatley, et al.

                Defendants

TO THE { X } CLERK OF COURTS    TO THE SHERIFF OF FRANKLIN COUNTY

YOU ARE INSTRUCTED TO MAKE:    { X } CERTIFIED MAIL SERVICE

                                      {   } ORDINARY MAIL SERVICE

                                      {   } PERSONAL SERVICE

                                      {   } RESIDENCE SERVICE

UPON:

Jack K. Beatley
70 West Northwood Avenue, #1E
Columbus, OH 43201

64 W. Northwood Avenue, LLC
c/o Washington Holding Company, Statutory Agent
1635 W. First Avenue
Columbus, OH 43212

John Doe, name unknown, occupant
64 West Northwood Avenue
Columbus, OH 43201

Don Breckenridge
2650 Columbus Street
Grove City, OH 43123

FILED
COMMON PLEAS COURT
FRANKLIN CO. OHIO
2006 JUL 14 PM 3:49
CLERK OF COURTS-CV

                                      Robyn M. Regan, Attorney
                                      Ohio Supreme Court Reg. #0075533

                                        «BarcodeLabel»

200618098
(kmb)

COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO

PRAECIPE

06CVE07 9066

Washington Mutual Bank fka
Washington Mutual Bank, FA           CASE NO:
                    PLAINTIFF

Jack K. Beatley, et al.
                    DEFENDANT

Please issue a Residential Service of Summons on the Complaint via Court Appointed Special Process Server Legalex, Inc.

Jack K. Beatley
70 West Northwood Avenue
#1E
Columbus, OH 43201

John Doe, name unknown, occupant
64 West Northwood Avenue
Columbus, OH 43201

Robyn M. Regan
Ohio Supreme Court No. 0075533
Attorney for Plaintiff
Lerner, Sampson & Rothfuss
120 East Fourth Street, 8th Floor
Cincinnati, OH 45202-4007
(513) 241-3100
(513) 241-4094 Fax
attyemail@lsrlaw.com

CLERK OF COURTS-CV  2006 JUL 14 PM 3:49  FILED COMMON PLEAS COURT FRANKLIN CO OHIO

1